AO 93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br><br>Information associated with the cellular telephone assigned call number (602) 377-7796 that is stored at premises controlled by T-Mobile. | Case No. 25-5505 MB |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of New Jersey:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before  12/2/25  *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to any United States Magistrate Judge on duty in the District of Arizona.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ___ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date: Nov. 18, 2025
       @ 5:00 p.m.

_____
*Judge's signature*

City and state: Phoenix, Arizona     Honorable Deborah M. Fine, U.S. Magistrate Judge
                                      *Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number 602-377-7796 (the "Account"), which is stored at premises controlled by T-Mobile ("the Service Provider"), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054

## ATTACHMENT B

### Particular Things to be Seized

**I.   Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period December 1, 2024 to August 15, 2025:

- a. The following information about the customers or subscribers of the Account:
    - i. Names (including subscriber names, user names, and screen names);
    - ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
    - iii. Local and long distance telephone connection records;
    - iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
    - v. Length of service (including start date) and types of service utilized;
    - vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

2

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account (including voice, text, packet data, or other data communications), including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

ii. information regarding the cell tower and antenna face (also known as the "sectors") through which the communications were sent and received; and

iii. Timing advance data, also referred to as per call measurement data, "Real Time Tool" (RTT) data, TrueCall data, Network Event Location System (NELOS), Location Database of Record (LOCDBOR), or any other record containing information regarding a distance to tower or estimated location.

## II.     Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 18, United States Code ("U.S.C.") § 875 (c) (Interstate Threats), and 18 U.S.C. § 247(a)(2) (Obstruction of Persons in the Free Exercise of Religious Beliefs) involving Kevin Charles Pyles during the period December 1, 2024 to August 15, 2025.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

In the Matter of the Search of

Information associated with the cellular telephone assigned call number (602) 377-7796 that is stored at premises controlled by T-Mobile.

Case No. 25-5505MB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

**This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A).**

located in the District of New Jersey, there is now concealed:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C. § 875 | Interstate Threats |
| 18 U.S.C. § 247(a)(2) | Obstruction of Persons in the Free Exercise of Religious Beliefs |

The application is based on the facts contained in the attached Affidavit of Ryan S. Conway.

☒ Continued on the attached sheet.
☐ Delayed notice of __ days is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Ben Goldberg

Digitally signed by BENJAMIN GOLDBERG
Date: 2025.11.13 14:21:29 -07'00'

Subscribed to and sworn telephonically before me.

Date: Nov. 18, 2025 5:00pm

City and state: Phoenix, Arizona

*Applicant's Signature*

Ryan S. Conway, Task Force Officer, FBI
*Printed name and title*

*Judge's signature*

Honorable Deborah M. Fine, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number 602-377-7796 (the "Account"), which is stored at premises controlled by T-Mobile ("the Service Provider"), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054

## ATTACHMENT B

### Particular Things to be Seized

**I.   Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period December 1, 2024 to August 15, 2025:

- a. The following information about the customers or subscribers of the Account:
    - i. Names (including subscriber names, user names, and screen names);
    - ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
    - iii. Local and long distance telephone connection records;
    - iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
    - v. Length of service (including start date) and types of service utilized;
    - vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

2

      vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account (including voice, text, packet data, or other data communications), including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

      ii. information regarding the cell tower and antenna face (also known as the "sectors") through which the communications were sent and received; and

      iii. Timing advance data, also referred to as per call measurement data, "Real Time Tool" (RTT) data, TrueCall data, Network Event Location System (NELOS), Location Database of Record (LOCDBOR), or any other record containing information regarding a distance to tower or estimated location.

## II.  Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 18, United States Code ("U.S.C.") § 875 (c) (Interstate Threats), and 18 U.S.C. § 247(a)(2) (Obstruction of Persons in the Free Exercise of Religious Beliefs) involving Kevin Charles Pyles during the period December 1, 2024 to August 15, 2025.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Ryan S. Conway, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this Affidavit in support of an application for a search warrant for information associated with a cellular telephone assigned call number 602-377-7796 (the "Target Telephone"), which is stored at premises controlled by T-Mobile ("the Service Provider"), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054. The information to be searched is described in the following paragraphs and in Attachment A. This Affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require the Service Provider to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Task Force Officer ("TFO") with the Federal Bureau of Investigation ("FBI") and have been since May 5, 2025. I am currently assigned to the Phoenix Field Office in Phoenix, Arizona, and I am a member of the Joint Terrorism Task Force, where my primary responsibility is investigating acts of domestic terrorism. I am also a sworn Peace Officer in the State of Arizona with the Tempe Police Department and have been since January 2006. As an FBI TFO, my duties and responsibilities include conducting criminal investigations of individuals and entities for possible violations of federal laws, particularly those laws found in Title 18 of the United States Code.

3. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.   Based on the facts set forth in this Affidavit, there is probable cause to believe that violations of Title 18, United States Code ("U.S.C.") § 875 (c) (Interstate Threats), and 18 U.S.C. § 247(a)(2) (Obstruction of Persons in the Free Exercise of Religious Beliefs) have been committed by Kevin Charles Pyles ("PYLES"). There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

### *Initial Investigation*

5.   On or about August 11, 2025, the FBI Phoenix office received a tip through the Arizona Counter Terrorism Information Center ("ACTIC") about a Twitter/X account making threatening statements towards the Jewish community. The tip was sent to ACTIC from a security organization that focuses on the security of synagogues and the Jewish community through intelligence gathering.

6.   Contained within the tip were a series of screenshots of postings, responses, videos, and photographs of the Twitter/X account. The tip also alleged that the user operating the account was "Kevin Charles Pyle" (sic). Based on this information, the Phoenix Police Department ("PPD") conducted their own investigation and identified Kevin Charles Pyles ("PYLES") as the user of the Twitter/X account. PPD was able to use the email address registered to the account and, using law enforcement databases, identified PYLES as the user of that email account. PYLES would also later confirm to PPD, as noted below, that he was the creator and sole user of the Twiter/X account. During the investigation, law enforcement also determined that a two-door silver 2012 Chevrolet Camero convertible was registered to PYLES.

7.   On August 15, 2025, a confidential human source ("CHS") with a history of providing reliable information to the FBI, provided the FBI Phoenix office with additional screen captures of the Twitter/X account. I was able to view several postings from the

account, whether from the tip initially provided, the additional information provided by the CHS, or from publicly available online postings. Some of the relevant postings include:

  a. December 18, 2024 – replying to [redacted username] "my mp40 says your all fucked"
  b. April 20, 2025 – "[2 lightening bolt emoji's] Already have my own baby penis sucker slayer MP40." A photograph of an MP 40 firearm was included with this post.
  c. June 24, 2025 – "4th reich is here jews! I got my MP40". PYLES, in a later interview, stated that the purpose of this post was to scare Israel.
  d. July 7, 2025 – "I am hitler. Start [fire emjoi] down synagogues and blackrock financial buildings. Just look them up and take them out if you're near one. I'd do it. It's worth the jail time for me. Fuck any feds that read this." PYLES, in a later interview, stated that his intention was the grab the government's attention, tell the Jewish community to "step off our country", and that 'I am Hitler' was a scare tactic towards Israel.
  e. July 10, 2025 – "Start attacking synagogues! I'm planning on it."
  f. July 10, 2025 - "Put propane cans by the synagogues and hit them far with a rifle. It's time to strike the Jews"
  g. July 10, 2025 – "I'm not fucking joking when I say that I'm going to be the next to attack baby penis sucking jews. This is full-scale war people."

### Additional Investigation and Synagogue Incidents

8.  During my review of the Twitter/X account, I also noticed a number of additionally concerning posts and videos. For instance, on August 8, 2025, PYLES posted "Arrest/kill the Epstein clients or I'm torching a synagogue with frens2. You're choice

3

Feds." That same day, he also posted, in response to a posting about political events between the United States, Ireland, and Israel, "It's time to start threatening our government"

9.  I also viewed a video that was posted on the account on August 10, 2025. The video was posted with the caption "Fuck Israel. Fuck anything Jewish. I'm buying Jewish stuff and smashing it up as a hobby now." In reply to the video, the Twitter/X account further stated "Btw that's a synagogue in PHX where they suck baby penis."

10.  During the video, a white male was positioned in the driver's seat of a white or gray sedan parked in the roadway near the driveway of the Sha'arei Shalom Congregation in North Phoenix. The individual, seeing the synagogue's camera, displayed a drinking glass to the camera that had the word "Passover" on it. The individual then threw the glass into the driveway and said, "Fuck the Jews. Kill yourselves you little faggots. Get the fuck out of here," before driving away.

11.  On or about August 12, 2025, PYLES posted on his X account - "I'm well armed. If I see Feds, it's just Israeli soldiers in disguise and I will open fire. I'm not scared of baby c*** sucking jew government. Heil Hitler!"

12.  After viewing those postings, FBI agents interviewed the rabbi at Sha'arei Shalom Congregation on August 21, 2025. During the interview, the FBI was provided with Ring Video camera footage and still images from a July 11, 2025 incident that was recorded at the synagogue.

13.  According to the video and witness statements, at approximately 1:50 pm a silver two-door black-top convertible resembling the vehicle registered to PYLES parked in the synagogue parking lot. An individual wearing a black-hooded sweatshirt exited the vehicle, placed a flyer on the door of the synagogue, and then returned to his vehicle and left. Below are photographs taken from the video footage:

4





14.     The flyer had five images and stated, "Every single aspect of baby penis sucking is Jewish. Don't hate the flyers... Hate the baby penis vampires." On the flyer was a website, two QR codes, and the quote, "** These flyers were distributed randomly without malicious intent**".



15. The rabbi did not report the July 11 incident to law enforcement as he could not fully identify the individual.

16. I also interviewed a board member at Sha'arei Shalom Congregation, who told me that multiple members have begun to attend religious services less frequently as a result of the July 11 flyer and August 10 glass-throwing incidents. A photograph of the flyer and the circumstances of the incident were discussed among the members of the synagogue's board.

*Arrest and Interview*

17. On August 15, 2025, PYLES was arrested by the PPD and charged with one count of making a terrorist threat and one count of computer tampering, both felonies. During the arrest, Pyles had the Target Telephone on him and PPD officers seized the Target Telephone.

18. That same day, PPD detectives conducted a post-Miranda custodial interview with PYLES. During the interview, PYLES admitted that the Twitter/X account was his and that he was the only individual to have access to the account. PYLES was shown a series of postings from the account and admitted to making all of them.

6

19. In the interview, PYLES told officers that he wanted to attack a synagogue to cause damage. PYLES espoused his hate and discontent for the Jewish community and other races, and said that he believed the Jewish community is impinging on the white race and the United States. PYLES blamed his inability to keep a job and get ahead in life on minority communities and stated he wanted to send a message to others in the country about what he believed the Jewish community was doing to this country.

20. PYLES also admitted to throwing the glass at a synagogue and said it was an effort to say, "just get out of here." PYLES stated it was a symbolic statement showing that the Jewish culture is hated.

21. Pyles claimed that he was not planning to torch a synagogue. He stated that if he were to attack a synagogue, he would not hurt anyone, he would just destroy the building. He did not believe he was not able to kill things. His efforts would be focused on the Jewish culture and synagogues to get his message across.

22. On August 15, 2025, the PPD executed search warrants granted by the Maricopa County Superior Court on PYLES' vehicle and storage unit. Each search warrant resulted in the seizure of firearms – including one MP 40. His possession of this specific firearm was of particular concern due to the fact this firearm was pictured on his Twitter/X account and was referred to as his "baby penis sucker slayer".

23. In my training and experience, I have learned that the Service Provider is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or

7

more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone.

24. Based on my training and experience, I know that the Service Provider can collect cell-site data about the Target Telephone. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

25. A preservation request was sent to T-Mobile on September 8, 2025.

26. Based on my training and experience, I know that the service provider also collects timing advance data. Timing advance data provides a calculation of the approximate distance of the cellular device from a cellular tower based on the measured time it takes for signals to travel between the device and the tower. This information provides an approximate location range that is more precise than typical cell-site data. Additionally, the service provider may collect derivative location information from the timing advance measurements, providing an estimated location of the device. Timing advance data may also be referred to as per call measurement data, "Real Time Tool" (RTT) data, TrueCall data, Network Event Location System (NELOS), or Location Database of Record (LOCDBOR).

27. Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional

8

records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Telephone's user or users, and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

28. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41.

29. I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Ryan S. Conway
Task Force Officer, Federal Bureau of Investigation

Subscribed and sworn telephonically before me on Nov. 18, 2025 @ 5:00 p.m.

HONORABLE DEBORAH M. FINE
UNITED STATES MAGISTRATE JUDGE

9